**In re Leroy R. OLSON, Debtor.**

**NATIONAL BANK OF DETROIT, as Trustee, American Motors Corporation and the AMC–UAW Sub Plan Joint Board of Administration, Plaintiffs,**

v.

**Leroy R. OLSON, Defendant.**

**Bankruptcy No. 80–00899.**
**Adversary No. 80–0289.**

United States Bankruptcy Court,
E. D. Wisconsin.

Jan. 21, 1981.

David B. Kern, Quarles & Brady, Milwaukee, Wis., for plaintiffs.

Frederick F. Klimetz, Ruetz & Ruetz, S.C., Kenosha, Wis., for debtor.

DECISION AND ORDER

C. N. CLEVERT, Bankruptcy Judge.

I

The debtor in this case filed a Chapter 7 petition on April 23, 1980, and scheduled as an unsecured debt a $1,642.40 overpayment he received under the American Motors Corporation (AMC) Supplemental Unemployment Benefit Plan (SUB). Plaintiffs, who are the sponsor, trustee and adminis-

trator of the plan, then commenced this action to determine the dischargeability of the obligation on the ground that it is not a debt as defined by the Bankruptcy Code. 11 U.S.C. § 101 *et seq.* In the alternative, they argue that the obligation is a nondischargeable debt under 11 U.S.C. § 523(a)(4). The plaintiffs also seek a determination that the discharge of the debt would contravene the purposes of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, and the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*

Since the facts of the case are undisputed, the parties have submitted the issues to the court on briefs.

## II

Between February of 1977 and April of 1979, AMC employees were covered by a collective bargaining agreement which provided for the payment of supplemental unemployment benefits (SUB) during layoff periods. Employees became eligible to receive SUB payments by earning one-half credit unit for each week they worked. When an employee received SUB payments, his accumulated credit units would be reduced.

Although an employee could receive public unemployment benefits as well as SUB payments, benefits in excess of 95% of the employee's weekly after-tax pay would result in an overpayment which the SUB Plan trustee was authorized to setoff from future SUB payments or collect from the employees' future paychecks. However, in each instance, the employee's used credit units would be restored.

Here the debtor received retroactive benefits under the Trade Act of 1974, 19 U.S.C. § 2271 *et seq.*, which resulted in a SUB overpayment which was partially recouped by wage deductions before and up to a month after the debtor filed his bankruptcy petition on April 23, 1980.[1]

1. The SUB Plan trustee's deductions from the debtor's wages after the order for relief were contrary to the stay provisions of 11 U.S.C.

## III

The Bankruptcy Code's general discharge provisions are contained in 11 U.S.C. § 727(a). Subsection (b) of that statute states:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all *debts* that arose before the date of the order for relief under this chapter . . . . [Emphasis added]

Thus, a discharge impacts debt which is defined in 11 U.S.C. § 101(11) as "liability on a claim." A claim on the other hand is defined in 11 U.S.C. § 101(4) as a:

> . . . (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured . . . .

"The terms 'claim' and 'debt' are coextensive," S.Rep.No. 989, 95th Cong., 2d Sess., 23 U.S.Code Cong. & Admin.News 1978, 5787 and reports issued by the House and Senate clarify their force and effect. For example, the House report emphasizes that the definition of claim under the Bankruptcy Code has been greatly expanded over past law and states:

> By this broadest possible definition, and by the use of the term throughout the [sic] title II, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent will be able to be dealt with in the bankruptcy case. H.R.No.595, 95th Cong. 1st Sess. 309 (1977), U.S.Code Cong. & Admin.News 1978, 5787. See also S.Rep.No.989, 95th

§ 362(a). Therefore those sums are recoverable.

Cong. 2d Sess. 21–22 (1978), U.S.Code Cong. & Admin.News 1978, 5787.

The legislative history also notes:

This definition of "debt" and the definition of "claim" on which it is based, ... does not include a transaction such as a policy loan on an insurance policy. Under that kind of transaction, the debtor is not liable to the insurance company for repayment; the amount owed is merely available to the company for setoff against any benefits that become payable under the policy. As such, the loan is not a claim (it is not a right to payment) that the company can assert against the estate; nor is the debtor's obligation a debt (a liability on a claim) that will be discharged under proposed 11 U.S.C. 523 or 524. S.Rep.No.989, 95th Cong. 2d Sess. 23 (1978), U.S.Code Cong. & Admin.News 1978, 5787.

It is upon the above language that the plaintiffs premise their argument that the debtor's SUB overpayment is not a debt which may be discharged in this bankruptcy case. Arguing that SUB overpayments are analogous to an insurance policy loan, the plaintiffs conclude that the quoted language and an explanatory floor statement regarding "debt" given by Congressman Edwards of California on September 23, 1978,[2] indicate a Congressional intent that legal relationships such as theirs and the debtor's should be excluded from the scope of the definition of debt.

■ This court disagrees. The plaintiffs clearly have a claim against the debtor and the debtor just as clearly owes them a debt. The thrust of plaintiffs' suit is that the AMC SUB Plan gives them the right to collect overpayments and obligates the debtor to return overpayments either directly or indirectly through payroll deductions. And the mere fact that the debtor's SUB "account" must be credited with any sums he may repay does not change the character of the debtor's relationship with the plaintiffs or make the transition like an insurance policy loan.

■ The second argument advanced by plaintiffs is that the debtor's SUB overpayment is excepted from discharge by virtue of 11 U.S.C. § 523(a)(4),[3] in that it constitutes a debt for defalcation while the debtor was acting in a fiduciary capacity.[4] The plaintiffs reason that because AMC's collective bargaining agreement required the debtor to immediately return SUB overpayments and the debtor failed to return his overpayments after receiving notice, his actions constituted a defalcation by a fiduciary which warrants excepting the debt from discharge.

Again, the court disagrees. The plaintiffs have not presented any evidence which establishes that the debtor ever acted in a "fiduciary capacity" in accordance with § 523(a)(4) or its predecessor statutes. *In*

---

**2.** "Section 101(11) defines 'debt' to mean liability on a claim, as was contained in the House-passed version of H.R. 8200. The Senate amendment contained language indicating that 'debt' does not include a policy loan made by a life insurance company to the debtor. That language is deleted in the House amendment as unnecessary since a life insurance company clearly has no right to have a policy loan repaid by the debtor although such company does have a right of offset with respect to such policy loan. Clearly, then, a 'debt' does not include a policy loan made by a life insurance company. Inclusion of the language contained in the Senate amendment would have required elaboration of other legal relationships not arising by a liability on a claim. Further the language would have required clarification that interest on a policy loan made by a life insurance company is a debt, and that the insurance company does have right to payment to that

interest." 124 Cong.Rec. 11090 (daily ed. Sept. 28, 1978)

**3.** Section 523(a)(4) reads:

A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. . . .

**4.** Page 10 of plaintiffs' brief states:

If the Company or the Board determines that any Benefit(s) paid under the Plan should not have been paid or should have been paid in a lesser amount, written notice thereof shall be mailed to the Employe receiving the Benefit(s) and he shall return the amount of overpayment to the Trustee. . . .

*re Harrill*, 1 B.R. 76, 79–81 (Bkrtcy. E.D. Tenn. 1979). *In re Angelle*, 610 F.2d 1335 (5th Cir. 1980).

As recently noted in *The Matter of Falk of Bethlehem*, 3 B.R. 266, 270 (Bkrtcy. N.J. 1980):

> The term "fiduciary" has been consistently limited by the courts to apply only to express or technical trusts and not to trusts imposed ex maleficio, that is, a trust imposed because of an act of wrongdoing out of which the debt arose or a trust imposed by the law from contracts. See *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 208, 11 L.Ed. 236 (1844); *In re Thornton*, 544 F.2d 1005, 1007 (9th Cir. 1976); *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511 (2d Cir. 1937); 1A Collier on Bankruptcy, para. 17.24 (14th ed. 1978).... Where, however, the relationship is essentially one of debtor-creditor, the courts will not find that a trust relationship existed prior to the act of wrongdoing.

Therefore, contrary to the argument advanced in plaintiffs' brief, "a constructive trust is not sufficient to create a fiduciary relationship under the discharge provisions of the Bankruptcy [Code]." *In re Angelle*, supra at 1339.

■ The plaintiffs' third argument is that the court should allow them to collect their debt as a post-petition "setoff" because discharging the debtor's obligation to return his SUB overpayment would frustrate the purposes of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* and the National Labor Relations Act, 29 U.S.C. § 159 *et seq.* However, this argument is totally without merit and the court will not discuss it except to note that the burden of proving that the debtor's obligation should be excepted from discharge rests on the plaintiffs who have failed to identify any legal basis for their request for a "special" exception to discharge.

**IV**

Upon the foregoing, which constitutes my findings of fact and conclusions of law,

IT IS HEREBY ORDERED AND ADJUDGED that the complaint in this case be, and the same is hereby, dismissed with prejudice.