**In re Vincent F. KILLIAN, Jr. and Margaret H. Killian, Debtors.**

**Bankruptcy No. 881–82293–20.**

United States Bankruptcy Court, E. D. New York, at Westbury.

July 8, 1982.

552

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for U. S. Postal Service; Michael A. Mulqueen, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

Siben & Siben, Bay Shore, N. Y., for debtors; Jeb A. Niewood, Plainview, N. Y., of counsel.

## MEMORANDUM

ROBERT JOHN HALL, Bankruptcy Judge.

Vincent F. Killian, Jr. ("the debtor") moves this Court to reopen his chapter 7 case that an order might be entered adjudging the United States Postal Service ("the Postal Service") in civil contempt based on the Postal Service's alleged failure to honor the debtor's discharge. The Postal Service countermoves to reopen the case that it may obtain a declaratory judgment that the obligation in question was not a debt within the meaning of the Bankruptcy Code and consequently not discharged. Motion denied; countermotion granted.

### Background

The facts are not in dispute. The debtor was and is a full time letter carrier employed by the Postal Service. In 1981, the debtor had more than three but less than fifteen years of service. Consequently, he was entitled to earn 160 hours (20 days) of annual leave by working the entire year. United States Postal Service, Employee & Labor Relations Manual § 512.311 (1979) ("E. L. R. M.").[1] However, as with all full time employees, the debtor was credited with the full 160 hours in the beginning of 1981, *id.* at § 512.312, and he used the full amount in January of that year. Thereafter, due to an injury, the debtor was unable to work and was put on leave without pay status for most of the year. While on nonpay status, a postal employee does not accrue annual leave. *Id.* at § 512.315. Consequently the debtor continued to "owe" the Postal Service approximately one year's labor or four weeks salary.[2]

As long as the debtor remains an employee of the Postal Service, its enforcement remedies vis-a-vis this obligation are limited to denying the debtor any further annual leave until he has "repaid" the leave by earning it back, *i.e.*, by working. Moreover, if the debtor is separated from the Postal Service due to death or disability, the obligation is voided. *Id.* at § 512.722. However, should the debtor be separated from the Postal Service for any other reason, then in the language of the regulation:

1. Prior to 1970 the transportation and delivery of mail in this country was administered by an executive department of the government known as the Post Office Department. *See* 39 U.S.C. § 301 (repealed 1970). The Postal Service, on the other hand, was created as an independent establishment of the executive branch on 12 August 1970. Pub.L.91–375, 84 Stat. 720; 39 U.S.C. § 201 (Supp. IV 1980). However, section 5 of the enabling legislation provided a savings provision that all regulations of the Post Office Department were still operative unless repealed by the Postal Service. 84 Stat. 774. In addition, Postal Service em-

ployees were given the right to form unions, negotiate collective bargaining agreements and sue for their enforcement under the parameters as set by the National Labor Relations Board. 39 U.S.C. §§ 1201–1209.

At all times relevant to this controversy, the debtor was employed under a collective bargaining agreement negotiated by and between the Postal Service and the National Association of Letter Carriers which incorporated by reference all of the regulations cited in this opinion.

2. The actual annual leave debit appears to be 102 hours.

Separating employees who are indebted for unearned annual leave (or sick leave) have to refund the amount paid to them for such unearned leave. If employees do not make refunds, deductions are made from any salary due them.

*Id.* at § 512.721. In addition, when the debtor applies for his pension from the Civil Service Retirement and Disability Fund, *see* 5 U.S.C. §§ 2105(e), 8331 (Supp. IV 1980) or applies to withdraw those amounts he has paid into that Fund,[3] the Postal Service can seek to have this unearned and unrepaid leave setoff against his benefits. 5 C.F.R. § 831.1803, 831.1804 (1982).[4]

In any event, on 7 July 1981, the debtor and his spouse filed a voluntary petition under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* (Supp. IV 1980), scheduled the Postal Service as an unsecured creditor in the amount of $1,200.00 and obtained a discharge of all of their dischargeable debts on 28 January 1982. Thereafter, in March 1982, the debtor, having returned to work, made a demand on the Postal Service that it advance him his 1982 allotment of annual leave, which the Postal Service refused to do. When negotiation failed to resolve the dispute, the instant motions resulted.

### Discussion

■ The debtor's position is that when he used the four weeks of annual leave he had not yet earned, the Postal Service had essentially loaned him time, which translates into money which he would have been liable for had he been separated from the Postal Service. Accordingly, it was a debt within the meaning of the Code and therefore discharged via his chapter 7 proceeding. Consequently the Postal Service's insistence that he work this year before it will grant him more annual leave violates, under the debtor's thesis, the section 524 injunction against seeking enforcement of discharged debts.[5]

The Postal Service, relying on *New York City Employees' Retirement System v. Villarie,* 648 F.2d 810 (2d Cir. 1981) (per curiam), argues that the obligation to repay the annual leave was not a debt, and therefore not discharged inasmuch as the Postal Service has never had the right to sue the debtor for the deficiency.

In *Villarie,* the debtor was a member of the New York City Employees' Retirement System ("the System") under which he contributed to a retirement fund and from which he was able to borrow against 50% of his contributions. The repayment of such loans was mandated by the New York City Administrative Code by means of involuntary deductions from the debtor's pay check. Moreover, if he failed to repay the loan in full before he retired or resigned, the outstanding obligation was setoff against his retirement benefits.

The debtor in *Villarie* borrowed $2776.76 from the System prior to his obtaining a discharge of his debts in bankruptcy. Upon the System's action for a declaratory judg-

---

3. As of 7 July 1981, the debtor had paid approximately $2600.00 into the Fund.

4. Section 831.1804 provides:
   Money payable from the Fund may be setoff to effect recovery of any valid indebtedness to the United States if all of the following conditions are met:
   (a) The employee has been separated.
   (b) The debt amounts to $100 or more.
   (c) The creditor agency has exhausted all other means of recovery.
   (d) The creditor agency has offered and completed the procedures prescribed by 4 CFR Chapter II, Part 102.
   (e) The debtor has filed an application for his/her lump sum credit or for a monthly civil service annuity benefit.

5 C.F.R. § 831.1804 (1982).

5. The debtor also argues that the Postal Service has waived any possible defense by failing to file an objection to the discharge of the obligation in question within the time limits set by this Court for making such objections. This argument is meritless. Any objections to the dischargeability of debts predicated on fraud, larceny or malicious injury need be filed within the prescribed time limits. 11 U.S.C. § 523(c). The Postal Service's position is that the obligation is not a debt at all. Accordingly, there is no statutory time limit within which it had to move for this determination.

ment, the Second Circuit held that such facts did not define a debtor-creditor relationship. Rather, the Second Circuit suggested, the System had only made the debtor an advance against his future benefits. Consequently, the *Villarie* court held that there was no debt to be discharged and allowed the System to continue its wage deductions.

The facts in the instant case are essentially identical to those in *Villarie*.[6] Although the Postal Service advanced the debtor vacation benefits, it has no present right to sue the debtor for the amount of the advance. Rather, its enforcement rights are limited to setting off the obligation against the debtor's retirement fund benefits should he separate from the Postal Service. Consequently, under *Villarie*, when the debtor used the annual leave he was only borrowing his own money. This does not define a debt within the meaning of the Code.

Accordingly, the Postal Service is entitled to a declaratory judgment that it need not advance the debtor any further annual leave until he has worked sufficient time to bring his record current.

Settle Order.

---

6. The debtor relies on *In re Soto*, 667 F.2d 235 (1st Cir. 1981) and *National Bank v. Olson*, 9 B.R. 52, 3 C.B.C.2d 822 (Bkrtcy.E.D.Wis.1981). Both of these cases can be distinguished on their facts. In neither case did the creditor have a right of recovery against a fund created by the debtor.

*Neavear v. Schweiker*, 674 F.2d 1201, 6 C.B. C.2d 367 (7th Cir. 1982), on the other hand, is closer to the instant case. It is unclear, however, whether the excess benefits which the debtor therein received were limited to the contributions he had made to the Social Security System. Were they so limited, the decision would appear to be in conflict with *Villarie*. However, inasmuch as this Court is bound by *Villarie*, *Neavear* is of little comfort to the debtor.