**In re David L. JONES, Denise R. Jones, Debtors.**

**Bankruptcy No. 2–91–03089.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Dec. 13, 1991.

Deborah P. Ecker, Columbus, Ohio, for debtors.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Michelle Malis, Washington, D.C., Federal Retirement Thrift Inv. Bd.

## ORDER ON MOTION TO CLASSIFY THRIFT SAVINGS PLAN

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This matter comes before the Court upon the Motion of the Debtors to have this Court authorize the separate classification of the Thrift Savings Plan loan in their Chapter 13 proceeding. As grounds for

the Motion, the Debtors point to the fact that the administrator of the Thrift Savings Plan has indicated the following: 1) that it will not file a claim in this case; 2) that it will only accept payment through payroll deductions, and not through the Plan; and 3) that it will report the loan as a taxable distribution to the IRS if the loan is not repaid.

## I.  *Findings of Fact*

The Debtors, David and Denise Jones, are employed as a U.S. postal worker and a homemaker, respectively.  As a federal employee, David Jones contributed to the Thrift Savings Plan ("TSP").  The TSP is part of the retirement system which was created by Congress for federal employees in the Federal Employees' Retirement System Act of 1986 ("FERSA").  Pub.L. 99–335 (1986) (codified largely, as amended, at 5 U.S.C. §§ 8401–8479).

Funds contributed to the TSP are treated "as a trust described in Section 401(a) of [the Internal Revenue Code of 1954]." U.S.C. § 8440(a)(1).  All sums contributed by an employee or on his behalf are held in trust for the employee.  *See* 5 U.S.C. § 8437(g).  Any distributions from the TSP are treated "in the same manner as … distributions from … a [§ 401(a) I.R.C. (1954) ] trust."  5 U.S.C. § 8440(a)(2).  Consequently, any sums not repaid must be reported to the IRS and become subject to taxation and early withdrawal penalties.

The Debtors took out a signature loan for $4,000 against David Jones' TSP account.  Consistent with Federal Regulations, the Debtors authorized the deduction of $55.00 per month from David Jones' payroll checks for repayment of the loan.

Sometime following receipt of the loan proceeds by the Debtors, the Debtors filed a Chapter 13 petition, statement, and Plan. The Plan provides for payment of a 70% dividend to the Debtors' unsecured creditors.  The Debtors filed an Amended Budget with the instant motion which excepts the TSP loan from payment through the

Plan.  The Debtors' Chapter 13 Statement of Affairs shows the Debtors' current monthly income to be $1,809.00, which is in fact $55.00 lower than the actual amount. The reason is that this amount reflects the $55.00 per month payment which the Debtors propose to continue as a monthly deduction to repay the loan from the TSP account.  The result is an adjustment to the gross income required to be committed to the Debtors' Plan.  The Amended Budget lists monthly living expenses of $1,228.00.  These proposed figures provide for disposable income in the amount of $581.00 per month, which the Debtors have committed to the funding of their Plan. The Debtors argue that unless the Plan is approved as proposed they will not be able to repay the loan.[1]

## II.  *Conclusions of Law*

The Debtors wish this loan to be classified as a debt and request this Court to order that the payroll deductions be continued.  Such an order would, in effect, authorize the Debtors to fully repay themselves as creditors while paying the other creditors less than 100% of the debts owed them.

A similar case was considered by the court in *New York City Employees' Retirement System v. Villarie*, 648 F.2d 810 (2nd Cir.1981).  In *Villarie*, the debtor was a member of the New York City Employees' Retirement System ("System") who contributed to an annuity savings fund under that system.  The debtor received a loan from the System and, six weeks later, filed a joint petition in bankruptcy and listed the System as a creditor.  The System objected and sought a declaration that the advance was not a "debt" under the Bankruptcy Code and requested an order to allow it to resume deducting payments from the debtor's paychecks.

The court of appeals explained that a "claim" is a "right to payment" under 11 U.S.C. § 101(4)(A), while a "debt" is "simply liability on a claim" under 11 U.S.C.

---

**1.** Debtors note that the Board is only authorized to accept any repayment via payroll deductions.

*See* 5 C.F.R. § 1655.14(a) (1991).

§ 101(11). *Villarie*, 648 F.2d 810, 812. Accordingly, the court held that the advance was not a debt because the city's administrative code did not give the System the right to sue the debtor for the amount of the advance. *Id.* Instead, the code directed the System to "offset the amount borrowed against [the debtor's] future benefits." *Villarie*, 648 F.2d 810, 812. Therefore, the advance did not constitute a debt which could be discharged in bankruptcy, and the System could recoup the advance via deductions from the debtor's paycheck. *Villarie*, 648 F.2d 810, 812. *See also, In re Killian*, 22 B.R. 551 (Bankr.E.D.N.Y.1982), (Court likened advance vacation benefits to an advance retirement payment. The Court held that the debtor had borrowed his own money, and his obligation to the Postal Service was not a "debt" under the Bankruptcy Code and could not be discharged in a Chapter 7 proceeding); *Mullen v. United States*, 696 F.2d 470 (6th Cir.1983) (Air Force readjustment pay constituted an advance retirement payment which was not a "debt" nor a "claim" under the Bankruptcy Code).

Here, as in *Villarie*, any amounts not repaid to the TSP are merely offset from the Debtor's future benefits. *See* 5 U.S.C. § 8401 et seq. Thus, the TSP administrator has no right to repayment, and the loan does not constitute a "claim" under 11 U.S.C. § 101(4) nor a "debt" under 11 U.S.C. § 101(11); and the loan is not dischargeable in bankruptcy. By way of instruction, if the TSP administrator were to allow loans in excess of an employee's contributions, such loans would more properly be considered as "debts." However, the *Villarie* court failed to take into consideration the dividend proposed to creditors in that proceeding.

It would appear, in this Court's analysis, that the repayment of retirement funds could be proper in a case proposing payment of a 100% dividend to creditors. Under a 100% plan, the court's decision in *Villarie* to allow the repayment of the loan would prejudice the rights of creditors only to the extent of the time the plan is extended because of the inclusion of the debtor as a creditor. Allowing payment of a lessor

dividend to creditors, while permitting the full repayment of the debtor's retirement funds, would allow the debtor to place income, which the debtor will have available to him upon retirement, out of the reach of creditors.

Another case in point is *Matter of Carpenter*, 23 B.R. 318 (Bankr.D.C.N.J.1982) in which the debtor secured a loan from the New York City Teachers Retirement System prior to filing for a Chapter 13 bankruptcy. The debtor's plan called for the suspension of the monthly deduction payments until the Chapter 13 plan was completed. The System objected to the plan on the basis that it was not a creditor and therefore not bound by any order issuing out of the Bankruptcy Court.

The Bankruptcy Court noted that the city's administrative code, which provided that advances from the system must be repaid within four years by payroll deduction, was in conflict with the Bankruptcy Code, since the debtor would not be able to repay his creditors under the plan and make the required loan payments. *Carpenter*, 23 B.R. 318, 320. The Court recognized the strong public policy of protecting retirement benefits and retirement systems but stated that neither would be harmed because: 1) the System could offset the amount of the loan against future benefits, and 2) the debtor would not lose all retirement benefits, since he was limited to borrowing 50% of his contributions. *Carpenter*, 23 B.R. 318, 320. The Court noted that the Bankruptcy Code places total supervision and control of the debtor's estate in the Chapter 13 trustee and that the debtor's estate included "earnings from services performed by the debtor after the commencement of the case" until the plan is completed. *Carpenter*, 23 B.R. 318, 319–321 (quoting *In re Shepherd*, 12 B.R. 151, 153 (E.D.Pa.1981)). Accordingly, the court ordered the Chapter 13 plan to be amended to increase the monthly plan payments to provide a 100% dividend to creditors. The increase in the monthly plan payment was to be funded by the amounts previously deducted from the debtor's income to repay the loan. Only the remaining monthly in-

come available after payment of the 100% dividend was to be applied to reduce the outstanding System loan. *Carpenter,* 23 B.R. at 318, 321.

In the present case, the retirement system may offset the amount of the loan against future benefits, as in *Carpenter.* However, the Debtors' retirement benefits will be reduced if not repaid, because the Debtors were allowed to borrow up to 100% of their contributions, and nearly did so. Under TSP's regulations, if the Debtors do not repay their loan, the unpaid amount is reported to the IRS as a distribution and be subject to taxation and penalties.

If the Debtors were paying a 100% dividend to their creditors, then any excess funds not required by the Plan could be applied to repayment of the loan, as was the case in *Carpenter.* However, the Debtors in the instant case propose to pay the creditors a 70% dividend while repaying the loan. As the *Carpenter* court noted, 11 U.S.C. § 1322 provides that all future earnings of a debtor necessary for the execution of the plan are subject to the total supervision and control of the trustee. While it may be that the loan is beyond the province of this Court, as the loan does not constitute a "claim" or a "debt", it is clear that the Debtors' earnings are not. The Debtors' earnings constitute part of the estate while the Plan is in effect. Thus, this Court may require all of the Debtors' earnings to be included in the Plan where the dividend is less than 100%.

This could be the end of the analysis were it not for two apparently competing public policy considerations in the instant case—the protection of retirement benefits versus the provision of a fresh start under the Bankruptcy Code.

Here, it appears that the Debtors' existing retirement benefits would be virtually wiped out if the loan is not repaid. Even so, this result is mandated for two reasons. First, to allow the Debtors to withdraw and use their benefits in advance of retirement and then claim this as a protected fund would be unfair to their creditors. Second, such a holding would provide an inappropriate message to future debtors. The hold-ing would suggest that debtors contemplating bankruptcy could take out loans against their retirement fund and then insulate those sums from the Chapter 13 trustee. The result would be that sums expended from future earnings on the repayment of these loans would be beyond the creditors' reach. It is clear that Congress never intended this result. Section 1322 of the Bankruptcy Code provides that a debtor's estate is subject to the total supervision and control of the Chapter 13 trustee and includes *all* of the debtor's earnings while the plan is in effect.

The public policy consideration of providing debtors with a fresh start merits a similar conclusion. The granting of a fresh start must be accomplished under conditions consistent with the Bankruptcy Code. A guiding principle of bankruptcy is "good faith" and "fairness" in the treatment of creditors. As already mentioned, it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend.

In summary, to hold otherwise would permit the Debtors to insulate a portion of their future earnings from their estate which is unfair to the creditors and contrary to 11 U.S.C. § 1322. Secondly, it would set an untenable precedent, since it would encourage future debtors to take out such loans to insulate their future earnings from their creditors. Third, it would be counter to the public policy of providing a fresh start to debtors under conditions consistent with the Bankruptcy Code. The purpose of the Bankruptcy Code is to provide a fresh start, not a fine finish.

Accordingly, this Court holds that the Debtors may not make payments on their retirement loan under the Plan while paying their creditors less than a 100% dividend. Since this is not the case, the Debtors' Motion must be denied.

IT IS SO ORDERED.