**In re Robert HARSHBARGER, Mary Harshbarger, Debtors.**

**Bankruptcy No. 92–06237.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Dec. 19, 1996.

Todd G. Finneran, Wesley C. Emerson, Columbus, OH, for Debtors.

Frank M. Pees, Worthington, OH, Robert J. Sidman, Vorys, Sater, Seymour & Pease, Columbus, OH, for Chapter 13 Trustee.

### Order on Application for Attorney Fees

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

The matter is before the Court on the application for approval of attorney fees filed by counsel for Debtors. Opposition to the application for fees was filed by Frank M. Pees, Chapter 13 Trustee ("the Trustee"), and the Office of the United States Trustee ("UST"). The matter came on for hearing on September 10, 1996, at which time the parties were afforded an opportunity to present argument and evidence in support of their respective positions. Debtors Robert Harshbarger and Mary Harshbarger ("Debtors") were ordered to appear at the September 10, 1996 hearing, and did so appear. Testimony was provided at the hearing by Mary Harshbarger.

#### 1. Findings of Fact

Debtors filed their petition under Chapter 13 of the Bankruptcy Code on August 21, 1992. Todd G. Finneran was attorney of record for Debtors at the time of filing, and has represented the Debtors, at times with co-counsel Wesley C. Emerson, throughout this case. Debtors' initial Chapter 13 plan included a provision for the payment of 34% of the claims of general unsecured creditors. On September 2, 1992, Debtors submitted their First Amended Chapter 13 Plan, proposing to pay a 32% dividend to general unsecured creditors. On October 29, 1992, Debtors submitted a Second Amended Chapter 13 Plan proposing to pay a dividend of 28% to general unsecured creditors.

On October 30, 1992, the Trustee filed an objection to confirmation of Debtors' Chapter 13 Plan pursuant to 11 U.S.C. Section 1325, based on the disclosure in Debtors' Schedule of Current Income that Debtors were proposing to pay $65.00 per month to satisfy an advance received against an ERISA qualified pension plan. The Trustee asserted that this provision was contrary to 11 U.S.C. Section 1325(b) whereby Debtors are required to pay all disposable income to their Chapter 13 plan for at least 36 months. This Court scheduled a confirmation hearing on Debtors' Chapter 13 Plan for November 5, 1992, and found the Trustee's objection to be well taken. Confirmation of Debtors' Chapter 13 Plan was denied and Debtors were provided twenty days leave to amend their plan.

Debtors filed a Third Amended Chapter 13 Plan on December 1, 1992, and specifically included a provision whereby Debtors would continue to repay the $3,855.54 advance from Mary Harshbarger's ERISA qualified White Castle System, Inc. Profit Sharing Plan and Trust in full at the rate of $61.17 per month. On December 17, 1992, the Trustee filed an objection to confirmation of Debtors' Third Amended Chapter 13 Plan in light of Debtors' continued proposal to pay the White Castle System, Inc. Profit Sharing Plan and Trust advance in full, while paying a much lower dividend to other unsecured creditors.

The Chapter 13 Trustee cited *In re Jones,* 138 B.R. 536, 539 (Bankr.S.D.Ohio 1991) where the undersigned specifically ruled that a proposal such as the one made by Debtors to repay their pension plan advance was unfair to other creditors, and violated 11 U.S.C. Section 1325(b).

On January 8, 1993, Debtors filed an opposition to the Trustee's objection to confirmation of their plan, arguing that the future wages being dedicated to repay the pension plan loan were not property of the bankruptcy estate, citing *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) as support. The Debtors argued that the loan funds themselves were not property of the estate, and the repayment amount of $61.17 per month did not violate 11 U.S.C. Section 1325. By an Order entered February 10, 1993, Debtors' Chapter 13 proceeding was dismissed for failure to present a confirmable plan. On February 19, 1993, Debtors filed a notice of appeal and a motion for stay of the order dismissing the Chapter 13 case during the pendency of the appeal process. By Order entered February 26, 1993, this Court granted the motion to stay the order dismissing Debtors' Chapter 13 case during the pendency of the appeal process.

On December 8, 1993, the United States District Court for the Southern District of Ohio affirmed the decision of the Bankruptcy Court, and ruled that the loan from Mrs. Harshbarger's profit sharing plan could not be repaid as proposed by Debtors' Chapter 13 Plan. On January 5, 1994, Debtors filed their notice of appeal of the District Court's Order to the United States Court of Appeals for the Sixth Circuit. On September 19, 1995, the United States Court of Appeals for the Sixth Circuit affirmed the District Court decision, and upheld the dismissal of the Debtors' Chapter 13 bankruptcy proceeding for failure to submit a plan that satisfied the requirements of 11 U.S.C. Section 1325.

On April 1, 1996, counsel for Debtors filed a Supplemental Statement pursuant to Fed. R.Bankr.P. 2016(b), disclosing for the first time that Debtors and their counsel had agreed to attorney fees in the amount of $7,000.00 for representation of the Debtors in the appeals process. By an Order entered June 14, 1996, the Bankruptcy Court required counsel for Debtors to file an itemized fee application. Counsel for Debtors filed their application for attorney fees on July 8, 1996, ultimately resulting in the September 10, 1996 hearing on the fee application and the resulting objections.

This Court is called upon to determine what amount, if any, of the attorney fees requested by counsel for Debtors is allowable pursuant to 11 U.S.C. Section 330.

## II. *Conclusions of Law*

 Initially, it should be noted that this Court's June 14, 1996 "Order On Motion Of Chapter 13 Trustee To Require Debtors' Counsel To File Supplemental Fee Disclosure And To File An Appropriate Fee Application" provides the Court with clear authority to rule on the application for attorney fees filed by attorneys Finneran and Emerson. That Order provided that the Court was "confirming its jurisdiction to order counsel for Debtors to file an itemized fee application, and to review fees requested for work performed during the course of Debtors' bankruptcy proceeding, and the related appeals ... the Court is simply satisfying its duty to oversee fee issues in accordance with the terms and spirit of the Bankruptcy Code and Rules." This Court's June 14, 1996 Order was predicated on the responsibility of the bankruptcy court to review a debtor's transactions with its professionals in every case, *sua sponte,* if necessary. *In re Quaker Distributors, Inc.,* 189 B.R. 63, 68 (Bankr. E.D.Pa.1995). As set forth in this Court's June 14, 1996 Order, the fact that this bankruptcy proceeding was dismissed does not result in the bankruptcy court losing jurisdiction to consider the allowance of attorney fees to Debtors' counsel. *In re Fricker,* 131 B.R. 932, 938 (Bankr.E.D.Pa.1991).

 Attorney fees for debtors' counsel in chapter 13 proceedings are awarded pursuant to 11 U.S.C. § 330(a), and are entitled to priority expense status pursuant to 11 U.S.C. § 507(a)(1). While the Bankruptcy Reform Act of 1994 removed reference to payment of compensation to "the debtor's attorney" from § 330(a), Debtors' Chapter 13 proceeding

was filed prior to the effective date of that amendment. In order to review the request of counsel for fees in this case, the Court will look to 11 U.S.C. § 330(a) as it existed prior to the 1994 Amendments. As of the date of filing this Chapter 13 proceeding, 11 U.S.C. § 330(a) allowed the court to award to the debtor's attorney "reasonable compensation for actual, necessary services rendered by such ... attorney ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services ..." Analyzing the fee applications submitted by counsel for Debtors, the Court must initially determine whether the fees applied for relate to services that were reasonable, actual and necessary. Based on the application filed by counsel for Debtors, the Court has no basis to question whether the fees were actually incurred, and therefor will concentrate its analysis on whether the fees were reasonable and necessary.

 It is the applicant's burden to demonstrate entitlement to fees. *Continental Ill. Nat. Bank & Trust Co. of Chicago v. Charles N. Wooten, Ltd. (In re Evangeline Refining Co.)*, 890 F.2d 1312, 1326 (5th Cir.1989); *In re Zwern*, 181 B.R. 80, 85 (Bankr.D.Colo. 1995). In the Chapter 11 case of *Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.)* 997 F.2d 1321 (10th Cir.1993), the court stated that "[a]n element of whether the [attorney's] services were 'necessary' is whether they benefitted the bankruptcy estate." *Lederman*, 997 F.2d at 1323. Before the reasonableness of an attorney's services can be determined, such services must be found to have been necessary. *Lederman*, 997 F.2d at 1323. In a Chapter 13 case, the inquiry as to awarding fees to debtor's counsel must be "whether the services were 'necessary' in order to enable the debtor to perform the debtor's duties under the Code and to also enable the debtor to enjoy the benefits available in Chapter 13." *In re Stromberg*, 161 B.R. 510, 516 (Bankr. D.Colo.1993). While this may allow the Court to have a somewhat broader interpretation of "necessary" than stated in *Lederman*, the Court believes that in a Chapter 13 proceeding, counsel's services must not have

benefitted the individual debtor at the expense of the estate as a whole.

 Unless Debtors' counsel can prove both that the services rendered benefitted the estate, and that the services were necessary, fees will not be allowed under 11 U.S.C. § 330(a). *Stromberg*, 161 B.R. at 514; *Zwern*, 181 B.R. at 84, 88. The work of the attorney for which compensation is requested "must be evaluated in terms of benefit to the estate." *In re Copeland*, 154 B.R. 693, 699 (Bankr.W.D.Mich.1993) (citations omitted). While the 1994 Amendments to 11 U.S.C. § 330(a)(4)(B) allow for counsel fees for representing the interests of the debtor based on the benefit and necessity of such services *to the debtor*, that amendment only applies to cases filed after October 22, 1994, and is inapplicable here. The Court will therefor analyze whether the services of counsel for Debtors were beneficial to the estate, and that such services were necessary in accordance with the analysis under 11 U.S.C. § 330(a) prior to the 1994 Amendments to the Bankruptcy Code.

 The fees requested by counsel in this case relate solely to the appeals filed by Debtors in the United States District Court and Sixth Circuit Court of Appeals. During the appellate process, two issues were addressed by Debtors: (1) whether Debtors' pension plan could be repaid at a higher dividend than all other general unsecured creditors would receive; and (2) whether the Chapter 13 trustee was engaged in the unauthorized practice of law.

Beginning with the more substantive issue, counsel for Debtors asserted that the pension plan advance could be repaid in full, despite a much lower dividend proposed to unsecured creditors as part of Debtors' Chapter 13 plan, in light of the decision of *Patterson*. In *Patterson*, the Supreme Court found that an ERISA qualified pension plan was not property of the bankruptcy estate, but made no determination or inference as to whether future wages to repay a loan taken from such a plan would similarly be excluded from property of the estate. Debtors argued that "preserving one's pension *in toto* through payroll deduction to an ERISA carve out should satisfy the requirements of disposable

income." Appellants' Brief to United States District Court, p. 26. However, Debtors offered no authority to support that proposition, and the District Court found no such authority, instead finding that "[i]ncome which is used to pay back an unsecured loan or advance from a debtor's retirement account is not expended for the 'maintenance or support' of the debtor." Opinion and Order of the United States District Court, Case No. C2–93–0297, p. 4 (December 8, 1993).

At the time Debtors filed their Chapter 13 plan, this Court had already published its decision of *In re Jones,* 138 B.R. 536 (Bankr. S.D.Ohio 1991) which stated as follows:

> As already mentioned, it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend. In summary, to hold otherwise would permit the Debtors to insulate a portion of their future earnings from their estate which is unfair to the creditors and contrary to 11 U.S.C. § 1322. Secondly, it would set an untenable precedent, since it would encourage future debtors to take out such loans to insulate their future earnings from their creditors. Third, it would be counter to the public policy of providing a fresh start to debtors under conditions consistent with the Bankruptcy Code. The purpose of the Bankruptcy Code is to provide a fresh start, not a fine finish. Accordingly, this Court holds that the Debtors may not make payments on their retirement loan under the Plan while paying their creditors less than a 100% dividend. *Jones,* 138 B.R. at 539.

In addition to the *Jones* case, the case of *In re Scott,* 142 B.R. 126 (Bankr.E.D.Va.1992) was reported at the time Debtors filed this Chapter 13 case, agreed with the *Jones* decision, and held that *assets* in a retirement account are excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2), but future income dedicated to repayment of loans taken from such an account was not similarly excluded from the estate.

Debtors' counsel argued that *Jones* and *Scott* were decided before *Patterson,* and the

*Patterson* case gave Debtors the basis for proposing the subject Chapter 13 plan. However, as noted by the District Court and Sixth Circuit Court of Appeals, *Patterson* provided no support to Debtors' position, simply holding that 11 U.S.C. § 541(c)(2) excludes any interest in *a pension plan or trust* that contains a transfer restriction enforceable under relevant nonbankruptcy law, including ERISA, from property of the bankruptcy estate. Debtors' interest in their profit sharing plan account was not property of the bankruptcy estate under *Patterson.* However, there is nothing in *Patterson* to indicate or even infer that any part of Debtors' future earnings, which Debtors attempted to *voluntarily* use for repayment of a profit sharing plan loan, could similarly be excluded from the bankruptcy estate. The District Court also noted that Debtors failed to establish that the profit sharing plan account loan was a "debt" or that the plan was a "creditor" holding a "claim" in light of the provisions of the loan agreement, enumerated in detail in the District Court's decision of December 8, 1993. The Sixth Circuit Court of Appeals affirmed the District Court, citing *Jones* and *Scott* with approval. The Sixth Circuit held that it was "clear" that 11 U.S.C. § 541(c)(2) and *Patterson* combined to exclude from the bankruptcy estate a debtor's beneficial interest in a trust that is subject to a restriction on transfer enforceable under applicable nonbankruptcy law, but income debtors "chose" to use to repay a profit sharing plan loan was not similarly excluded. *Harshbarger v. Pees (In re Harshbarger),* 66 F.3d 775, 777 (6th Cir.1995). Such future income had to be treated as disposable income of the bankruptcy estate. *Id.*

Both the District Court and Sixth Circuit Court of Appeals gave short shrift to Debtors' argument that *Patterson v. Shumate* had any effect on the precedential value of *Jones* and *Scott.* In addition, the District Court and Court of Appeals gave very little attention to the arguments of Debtors that the Trustee was engaged in the unauthorized practice of law, especially in light of the fact that Debtors had not raised this issue at the trial court level, with both courts citing *In re Eagle–Picher Ind., Inc.,* 963 F.2d 855, 863

(6th Cir.1992). Certainly, there is no viable argument that raising the issue of the Trustee's alleged unauthorized practice of law somehow benefitted Debtors or their estate. This is especially true where counsel failed to raise this issue at the trial court level, and had no realistic possibility of successfully raising the issue for the first time at the appellate level.

The Court is reluctant to engage in second guessing the actions of counsel for Debtors, but finds that the circumstances here make such a review unavoidable. Counsel for Debtors argued that the decision to appeal the bankruptcy court order was made by Debtors "based on our counsel and our best efforts to make or to assist them in determinations about what their rights were." Transcript of September 10, 1996 Bankruptcy Court hearing, p. 8. Mrs. Harshbarger testified that Debtors' decisions were made with the advice of counsel (Transcript of September 10, 1996 hearing, pp. 35 and 37). It is clear to the Court that counsel for Debtors did not competently advise Debtors of the state of the law both before and after the *Patterson* decision, or about the costs involved in the appeal and chances of success. The issue involved here was repayment of a pension plan loan in the amount of $3,855.54. Attorneys fees of $7,000.00 on a claim as tenuous as the one presented by counsel for Debtors, in a situation where Debtors could have presented a 100% Chapter 13 plan within the statutory 60–month period of time, or paid a 42% dividend over 36 months and then repaid the pension plan loan after the initial 36 months in accordance with the provisions of Chapter 13 of the Bankruptcy Code, can be considered neither reasonable nor necessary. Certainly, such services were of no benefit, and actually harmed the estate as a whole, and the benefit to Debtors individually is doubtful at best. In no way did counsel's services with respect to the appeals enable Debtors to perform their duties under the Code, or enjoy the benefits of Chapter 13. *See Stromberg, supra.*

In this case, Debtors lost their commercial real property to foreclosure after paying the mortgage as part of an adequate protection payment during the pendency of the appeals

process. Debtors did not receive a discharge in bankruptcy, are currently receiving regular collection notices, and received no benefit whatsoever from being in this Chapter 13 bankruptcy proceeding for more than four years. While Debtors repaid the pension plan loan during the appeals process, the cost of doing so was exorbitant. From a review of the testimony presented on September 10, 1996, the Court concludes that Debtors were not properly counseled with respect to the costs of appeal, and specifically testified that they did not know that the appeals would cost more than the amount of the loan at issue. September 10, 1996 hearing transcript, p. 48.

Counsel for Debtors argued that "sometimes the point has to be made. And if a client chooses to exercise their judgment to prove a point if they can, that is a benefit calculated and reasoned to the client." September 10, 1996 hearing transcript, p. 64. These Debtors were simply not in a financial position to spend $7,000.00 to challenge by appeal an issue that could have been easily resolved by amending their Chapter 13 plan. Further, the Court finds the basis of the appeal to have been tenuous at best. The Court is hard pressed to see a realistic argument for extending the *Patterson* decision to future income "dedicated" by Debtors to repayment of a pension plan loan. Such an argument is clearly contrary to 11 U.S.C. § 1325. While Mrs. Harshbarger testified that she knew she could amend the Chapter 13 plan, she stated "... but we thought that with the length of time that it was going to take that it would have worked out, you know, we would still be paying into the plan, and if we lost we would have our money, we can make other arrangements." September 10, 1996 hearing transcript, p. 37. The trouble with this testimony is that Mrs. Harshbarger did not seem to consider the attorney fees that would be incurred in appealing the Bankruptcy Court and District Court decisions.

 The transcript of the September 10, 1996 hearing is replete with examples of Debtors' confusion with respect to the appeals process and costs of appeal. The Court also finds it troubling that Debtors were

advised that they had like a "50/50" chance of winning the appeals. September 10, 1996 transcript, p. 40. The Court understands that any appeal may have a chance of success, but the Court considers the chances of success of this particular appeal, on the bases presented, to be negligible. "An entity in bankruptcy can ill afford to waste resources on litigation; every dollar spent on lawyers is a dollar creditors will never see." *Pioneer Investment Services Co. v. Brunswick Associates,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Court here is left with the unmistakable impression that litigation costs were unwisely and needlessly incurred, based on advice of counsel. It is this Court's responsibility to prevent attorneys from overreaching in an effort to be paid for wasteful and needless litigation. *See, e.g., In re Riker Industries, Inc.,* 122 B.R. 964, 970 (Bankr.N.D.Ohio 1990).

The Court returns to the issue of whether the services of counsel for Debtors were reasonable and necessary, and provided a benefit to the Debtors or the bankruptcy estate. There is no question that the bankruptcy estate as a whole would have been better served by an amendment to the Chapter 13 plan, resulting in payment to creditors of between 42% and 100%, and Debtors receiving a discharge within the statutory period of time. Instead, as set forth above, Debtors have no discharge, have lost their rental property to foreclosure after making significant payments during the pendency of the appeals, and are again being forced to deal with creditors whose claims should have been resolved through the Chapter 13 process. The Court finds it clear under these circumstances that the services of counsel for Debtors were neither reasonable nor necessary, and provided no benefit to Debtors individually *or* their estate. As such, the requested fees are not compensable under 11 U.S.C. § 330(a), or allowable under 11 U.S.C. § 503(b).

▪ The Court also returns to the issue of the failure of counsel for Debtors to timely file their Supplemental Statement of Debtors' Counsel Pursuant to Bankruptcy Rule 2016(b). That Statement was not filed until April 1, 1996 in clear violation of Bankruptcy Rule 2016(b), and provides an independent basis for denying compensation. *In re TJN, Inc.,* 194 B.R. 400, 403 (Bankr.D.S.C.1996); *Fricker,* 131 B.R. at 941.

Based on the foregoing, it is hereby ORDERED that the Application for Approval of Attorney Fees filed on July 8, 1996 is DENIED, and the Trustee is hereby authorized to return to Debtors any monies being held on behalf of Debtors, in accordance with 11 U.S.C. § 1326(a)(2).

IT IS SO ORDERED.