**In re Geneva TUCKER, Debtor.**

**Bankruptcy No. 97–14046.**

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

April 9, 1998.

William L. Guy, Jackson, TN, Chapter 13 Trustee.

Albert Merkel, Jackson, TN, for Debtor.

## MEMORANDUM OPINION AND ORDER RE TRUSTEE'S OBJECTION TO CONFIRMATION

G. HARVEY BOSWELL, Bankruptcy Judge.

The Chapter 13 plan filed by the debtor listed two separate bank loans on which certificates of deposit had been pledged as collateral as the debtor's only secured debts. Tucker's plan proposed to repay these secured debts in full, while only proposing to pay a small percentage to her unsecured creditors. The Chapter 13 Trustee objected to this repayment plan, alleging that the debtor's plan was not entitled to confirmation because the debtor was not devoting all of her disposable income to the repayment of debts.

The Court conducted a hearing on this matter on February 5, 1998. FED. R.BANKR.P. 9014. Pursuant to 28 U.S.C. § 157(b)(2), this is a core proceeding. After reviewing the testimony from the hearing and the record as a whole, the Court makes the following findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

### I. FACTS

Sometime prior to filing her Chapter 13 bankruptcy petition, the debtor in this case, Geneva Tucker ("Tucker"), pledged two certificates of deposit as collateral for two separate loans. One certificate of deposit was in the amount of $5500 and was pledged to Leader's Credit Union ("Leader's") in Jackson. Tucker used the proceeds of this loan to purchase a 1983 Cadillac Seville. The

other certificate of deposit was in the amount of $7100 and was pledged to Volunteer Bank ("Volunteer") in Jackson. No proof was introduced at the hearing as to what the proceeds of this loan were used for.

Tucker's Chapter 13 plan was filed along with her Chapter 13 petition on October 17, 1997. In this plan, Tucker listed Leader's and Volunteer as her only two secured creditors and proposed to repay them in full over the life of the plan. Such repayment totals approximately $15,000. In addition to repaying this secured debt, Tucker's plan also proposed to repay unsecured creditors, but instead of the 100% repayment that the secured creditors were to receive, the approximate percentage to be paid to unsecured creditors was listed at approximately $5,000.00 or 30%.

As a result of Tucker's proposed repayment plan, the Chapter 13 Trustee filed an objection to confirmation. In such objection, the trustee alleged that Tucker's plan was not entitled to confirmation because it failed to devote all of the debtor's disposable income to the plan as required by 11 U.S.C. § 1325(b)(1)(B). At the confirmation hearing for Tucker's plan, the trustee asserted that by paying Leader's and Volunteer as secured creditors and redeeming her CD's, the debtor is, in essence, paying herself. This type of repayment plan allegedly violates § 1325(b)(1)(B) because the debtor's entire disposable income is not being used to repay creditors. In opposition to the trustee's motion, the debtor asserted that nothing in the Bankruptcy Code defines what type of security a person can retain in Chapter 13.

### II. CONCLUSIONS OF LAW

Pursuant to the directives of § 1325, a debtor is required to ensure that she will apply all projected disposable income throughout the plan period toward plan payments before a Chapter 13 plan may be confirmed. 11 U.S.C. § 1325(b)(1)(B). Disposable income is statutorily defined as "income which is received by the debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor." 11 U.S.C. § 1325(b)(2)(A). Although

the trustee alleged in his objection that the debtor's plan violates the "disposable income" requirement of § 1325, this Court finds that the situation at bar is more appropriately addressed under the "good faith" requirement of Chapter 13. Both the legislative intent behind § 1325(b) and the relevant case law interpreting § 1325(b) support this conclusion.[1]

■ In the case at bar, the debtor is proposing to classify and repay the Leader's loan and the Volunteer loan as secured debts. If this Court were to allow the debtor to do this, the net effect would be to allow the debtor to fully repay herself as a creditor while paying her unsecured creditors less than 100%. Such activity would not only violate the spirit of the Bankruptcy Code, but would also go against the majority of case law interpreting similar repayment proposals.

In the case of *In re Jones*, 138 B.R. 536 (Bankr.S.D.Ohio 1991), a bankruptcy court was faced with debtors who had borrowed against their retirement fund and then proposed to fully repay this debt as secured, while paying less than 100% to their other creditors. In refusing to allow the debtors to do this, the court aptly summed up why such a repayment scheme cannot be approved:

> Here, it appears that the Debtors' existing retirement benefits would be virtually wiped out if the loan is not repaid. Even so, this result is mandated for two reasons. First, to allow the Debtors to withdraw and claim this as a protected fund would be unfair to their creditors. Second, such a holding would provide an inappropriate message to future debtors. The holding would suggest that debtors contemplating bankruptcy could take out loans against their retirement fund and then insulate those sums from the Chapter 13 trustee.

The result would be that sums expended from future earnings on the repayment of these loans would be beyond the creditors' reach. It is clear that Congress never intended this result. Section 1322 of the Bankruptcy Code provides that a debtor's estate is subject to the total supervision and control of the Chapter 13 trustee and includes all of the debtor's earnings while the plan is in effect.

The public policy consideration of providing debtors with a fresh start merits a similar conclusion. The granting of a fresh start must be accomplished under conditions consistent with the Bankruptcy Code. A guiding principle of bankruptcy is "good faith" and "fairness" in the treatment of creditors. As already mentioned, it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend.

*Id.* at 539.

In the case at bar, Tucker is proposing to fully repay Leader's and Volunteer's loans and thereby redeem her certificates of deposit. Such actions are analogous to repaying a retirement fund. When Tucker fully repays the two loans, she gets her certificates of deposit back free and clear of all liens. Those two certificates are tantamount to a savings account. When the CD's are eligible for cashing in, Tucker gets the face value of the CD's in cash. If debtors are not entitled to redeem retirement accounts in this fashion, surely they are not entitled to do the same thing with CD's. In proposing to do so, Tucker is evidencing a lack of good faith and, as such, her plan cannot be confirmed.

For these reasons, the Chapter 13 Trustee's objection to confirmation will be sus-

---

1. Section 1325(b) was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984. This amendment was made in order to help clarify the meaning of "good faith" as used in § 1325(a)(3). "Debtors proposing to use all of their 'projected disposable income' for the life of the plan would be acting in good faith. Such a standard does not require any minimum amount or percentage of repayment to unsecured creditors." 5 *Collier on*

*Bankruptcy* ¶ 1325.09[1] (15th ed.1994). *See also In the matter of Jones*, 119 B.R. 996, 1000 (Bankr.N.D.Ind.1990)("Section 1325(b)(1)(B) requires a Chapter 13 debtor to dedicate all of its projected disposable income 'to make payments under the plan.' It does not require disposable income to be committed to the payment of unsecured claims under the plan—only to the plan's payments in general.")

tained and confirmation of Tucker's plan will be denied. Should Tucker be able to increase her plan payments so that 100% is paid to unsecured creditors or should she surrender her CD's to Leader's and Volunteer, thereby eliminating the monthly plan payment to these creditors, her plan may be confirmed. An order will be entered accordingly.

### III. ORDER

It is therefore **ORDERED** that the Trustee's Objection to Confirmation is **SUSTAINED.** It is further **ORDERED** that confirmation of debtor's Chapter 13 plan is **DENIED** until such time as the debtor's plan provides for 100% payment of her unsecured debts.

**IT IS SO ORDERED.**