139 B.R. 525 (1992)
In re Thomas Wayne CASULL and Madonna Maria Casull, Debtors.
Bankruptcy No. 91-21565 CEM.
United States Bankruptcy Court, D. Colorado.
April 3, 1992.
*526 Dale W. Aarestad, Colorado Springs, Colo., for debtors.
Sally J. Zeman, Denver, Colo., Standing Chapter 13 Trustee.

OPINION AND ORDER ON FEE APPLICATION FOR COUNSEL FOR THE DEBTORS
CHARLES E. MATHESON, Chief Judge.
This matter came before the Court on the motion of counsel for the Debtor in this Chapter 13 case asking that the Court reconsider its order allowing a fee of $1,200.00 for services by the attorney. At the hearing scheduled on the motion to reconsider, the Court received the evidence proffered by counsel and heard the arguments of the applicant and of the Standing Chapter 13 Trustee. This order enters as a result of those hearings.
The file in this case reflects that this was a fairly typical Chapter 13 case. There was only one secured debt of any consequence, which pertained to the Debtors' automobile, and the plan provided for a cramdown on the value of the car. There were no defaults to be cured on the secured claims. The principal financial problem dealt with in the case concerned student loan obligations.
When the plan was presented for confirmation, Debtors' counsel also presented his Attorney Fee Disclosure. In that Disclosure the attorney requested fees in the amount of $1,300.00 with $1,000.00 of that amount to be paid through the plan. No supporting documentation was provided.
Having reviewed the request at the time of confirmation, and finding that no fee application of any sort had been filed, this Court determined that it failed to present sufficient grounds to justify the fee requested. Consistent with the practice in this division of this Court, counsel was allowed a fee of $1,200.00. Thereafter, on December 13, 1991, Debtor's counsel filed a Motion for Reconsideration of this "sua sponte" reduction. Attached to that motion was a document captioned "Initial Chapter 13 Fee Application." The attorney also presented a time summary of the billing records for the time expended in the prosecution of the case. That time summary represented that the attorney had expended 6.2 hours at a billing rate of $150.00 per hour. His paralegal, Cheryl Brooks, had expended 17.7 hours at a billing *527 rate of $65.00 per hour and his paralegal, Christa Day, had expended 4 hours at a billing rate of $30.00 per hour. Those billing charges aggregated $2,200.00. In addition, counsel sought reimbursement for out-of-pocket expenses in the aggregate amount of $212.73 representing $149.70 for photocopies at $0.15 per copy and $63.03 in postage.
This matter comes before the Court by reason of the provisions of section 1322(a)(2) of the Bankruptcy Code. Under that provision the Debtors' Chapter 13 plan was required to provide for the payment of all claims for which priority is allowed pursuant to section 507 of the Code. Section 507(a)(1) provides that administrative expenses which are allowed pursuant to section 503(b) are to have first priority in payment out of the estate. Administrative expenses under section 503(b) include any fees allowed pursuant to section 330 of the Code.
Section 330 is the Code provision which governs the allowance of attorneys fees. It provides, in pertinent part:
After notice to any parties in interest and to the United States Trustee and a hearing . . . the court may award . . . to the debtor's attorney 
(1) reasonable compensation for actual, necessary services rendered by such . . . attorney, as the case may be, and by any paraprofessional persons employed by such . . . attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
(2) reimbursement for actual, necessary expenses.
Applications for fees must then comply with the provisions of F.R.B.P. 2016(a). That Rule specifies that the attorney, when seeking fees and expenses, must file an application "setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."
The basis for the allowance of professional fees in Chapter 13 was dealt with specifically in this District by Judge Clark in her companion opinions in the cases of In re Paul, 100 B.R. 38 (Bankr.D.Colo. 1989) and In re Taylor, 100 B.R. 42 (Bankr. D.Colo.1989). Those cases properly set forth the standards for the allowance of fees and the procedures to be followed both by the professional and the Court in dealing with fee applications. It is not necessary to repeat those standards here. Suffice it to say that this Court concurs in the standards espoused in those cases. In addition, this Court has also addressed pertinent questions concerning the allowance of fees and compensation for the utilization of paralegals in its opinion in In re Orthopaedic Technology, Inc., 97 B.R. 596 (Bankr.D.Colo.1989).
It is, of course, the obligation of counsel in the first instance to file a meaningful fee application. In re Paul, supra; F.R.B.P. 2016(a). The application filed here, as an exhibit to the Motion to Reconsider, is more extensive than usual. It still falls short of meeting the standards set forth in the Paul case and in the Bankruptcy Rule. The application itself does not advise the Court concerning the services provided and the benefits to the estate. It contains only one terse paragraph which has now become simply a boilerplate provision of counsel's fee applications which states:
The following is a short statement of any unusual, troublesome or unique aspects of this case which resulted in more than the usual amount of time being expended: These Debtors had a large number of creditors (including several problem creditors) which caused extensive schedule & amendment preparation, client advisements & assistances, etc.
The Court would observe that the file reflects that this case had three secured creditors, two of which were nominal, and thirty-seven unsecured creditors which is hardly a "large number." Further, there is no indication that there were any "problem creditors" and there were no objections filed to the motion to confirm the Chapter 13 plan.
*528 In addition to these statements, counsel also filed with the Court a time summary which purports to show the services provided and the time involved. That time summary is replete with cryptic entries such as "work on scheduling debts," "prepare cure phase schedules," "process automatic stay."
The paucity of information provided led the Court in the first instance to allow fees of $1,200.00. In the Court's view, based on its familiarity with hundreds of Chapter 13 cases, $1,200.00 represents a reasonable fee in most such cases. To be sure, there are cases where a larger fee might be justified. It is equally true, however, that a smaller fee might often be appropriate. Nonetheless, for the administrative convenience of both the Court and counsel, and, in the absence of other meaningful information justifying a contrary fee, the Court has been willing to allow a fee of $1,200.00.
By virtue of the motion to reconsider and the hearings held, the Court has been provided some additional information concerning the fees requested. It is appropriate, therefore, that the Court conduct the type of analysis contemplated by the Court in the Paul case, supra. This is fundamentally a lodestar analysis in the manner called for by the United States Supreme Court. See, Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). That approach requires the Court to first determine the reasonable number of hours necessary to provide the services and to apply to those hours a reasonable hourly rate.
The Court must start with the consideration of the hourly rate charged. In this case counsel seeks to charge a fee of $150.00 per hour for his services and a fee of $65.00 per hour for what he refers to as his "senior paralegal."
In the Court's view, these hourly rates are not reasonable considering the nature and complexity of the issues dealt with in this, or most other, Chapter 13 cases. It also appears to be beyond the range of the rates normally charged for comparable work by other attorneys regularly practicing before this Court. The Court takes note of the fact that Judge Clark in the Taylor opinion, supra, found the billing rate for attorneys to generally be in the range of $100.00 to $125.00 per hour and the average rate at which paralegal time is billed to be between $35.00 to $45.00 per hour. This Court's review of billings by attorneys in consumer bankruptcy cases, both Chapter 13 and Chapter 7, confirms Judge Clark's view in the Taylor case, supra.
The Court understands the desire of counsel to generate more income. The Court also realizes that one way to do so is by increasing the hourly rate charged. The problem is that the rate sought to be charged by the attorney is beyond the rate consumer debtors can reasonably be required to pay. The rates charged may very well be appropriate in representing commercial interests in reorganization cases and, indeed, rates of $150.00 per hour and above are regularly allowed by the Court. However, such rates are simply not compatible with the interests being represented in cases such as that now before the Court. As the Third Circuit most properly and succinctly observed, "Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3rd Cir.1983). This is not intended to demean the services provided by counsel in Chapter 13 cases but, rather, recognizes that the issues which arise in Chapter 13 cases generally do not require sophisticated or particularly involved legal analysis and advice, which might warrant a higher hourly rate.
The Court concludes that a reasonable hourly rate which may be allowed in this case is $125.00 per hour for counsel and $45.00 per hour for the senior paralegal when she is performing paralegal-type services. However, when the paralegals are performing clerical-type services, it is not appropriate for their time to be charged. In re Orthopaedic Technology, Inc., supra; In re Taylor, supra.
The hourly rate must then be applied to the reasonable number of hours required for the job. A review of the time charges submitted evidences of four types *529 of problems with the charges. These can be characterized as follows: (1) paralegal time charged for clerical services; (2) paralegal time that is mixed involving both clerical services and services requiring independent judgment and decision-making; (3) time charged which is more than reasonable should have been necessary; and, (4) time entries where the Court is unable to determine either the nature of the services or the reasonable amount of time which should have been necessary.
For ease of reference, there is appended to this Opinion and Order a copy of the billing records submitted by the applicant in this case. Entries which are questionable are marked in the left hand column by the respective number(s) to indicate why the Court believes the time is either inappropriate or excessive.
Most of the matters questioned by the Court are self-explanatory. A few are in need of some additional comment.
The file reflects that this Chapter 13 case was commenced by a petition-only filing. That is to say, the Debtors initially filed the bare petition accompanied by a matrix of the creditors' names and addresses. When such filings are made, the Clerk of the Court issues a notice of deficiency and the debtor is given a period of time within which to "cure" the deficient filing.
The attorney's time records reflect that the paralegal, Ms. Brooks, spent some 6.4 hours on August 21, 22 and 23, 1991, in working on the preparation of documents for the "quick" filing. This is an inordinate number of hours for the preparation of such simple documents in a very simple case. Part of the explanation from counsel is that Ms. Brooks not only assembled the necessary information but also physically typed the information into the computer. This is a purely clerical function for which there should not be a charge. In re Orthopaedic Technology, Inc., supra. The Court concludes that it is reasonable to allow three hours of paralegal time for this function.
Similarly, in reviewing the time entries for counsel, the Court cannot understand how counsel could have spent 1.2 hours reviewing the simple petition and creditors' matrix (time entry of 8/23) or 1.6 hours reviewing the supplemental documents which were necessary to cure the initial filing deficiency (time entry of 9/5/91). The Court will allow an aggregate of .9 hours for these activities.
Counsel also requests compensation for a total of 1.5 hours in the preparation of the fee application. It is this Court's practice to allow attorneys to seek reimbursement for fee applications but only at one-half the normal billing rate. This is done in light of the fact that in any commercial transaction the attorney is required to submit a billing statement to the client for which he is not compensated. Thus, a certain part of the work involved in presenting a fee application is simply consistent with the normal billing activities.
After deleting the time which pertains clearly to clerical-type duties, as indicated on the attached records, and after making the reductions noted, the Court is left with billings of 4.2 hours by the attorney, 11.6 hours for the paralegal, Ms. Brooks, and .5 hours for the paralegal, Ms. Day. The Court would observe that this time is roughly comparable to the hours billed in the Taylor case, supra, where the fee application reflected 2.8 hours of attorney time and 11.6 hours for the paralegal (which the Court reduced for clerical services and excess time). Billing the time allowed at $125.00 for the attorney, $45.00 for Ms. Brooks and $30.00 for Ms. Day results in this case of a fee of $1,062.00 by the lodestar approach.
The fee reached by the lodestar approach is certainly comparable to the fee allowed by the Court in Taylor, supra. It is also at the high end of fees allowed in Chapter 13 cases in other jurisdictions. See, e.g., In re Walker, 1991 WL 186585, 1991 Bankruptcy Lexis, 1326 (Bankr.N.D.Ind.1991) (usual fee not more than $1,000.00; hourly of $100.00); In re Bush, 131 B.R. 364 (Bankr. W.D.Mi.1991) (fee of $600.00; hourly rate of $90.00 per hour); In re Patronek, 121 B.R. 728 (Bankr.E.D.Pa.1990) ($1,200.00 allowed at the high end of permissible fees; $100.00 per hour allowed). In the Patronek *530 case the court noted that fees across the country tended to range from $450.00 to $1,000.00 for Chapter 13 cases.
In the final analysis, the allowance of fees for professionals is a highly subjective matter. The admonition of the statute is that the Court is to allow a "reasonable" fee. This does not involve the search for the exact fee, but a "reasonable" fee and there is a range of reasonableness.
The Court is well aware that the applicant in this case is diligent in his representation of his clients and that he is a responsible professional. His cases are filed and processed in a manner which causes a minimal amount of mechanical problems in moving through the Chapter 13 process. The Court also is appreciative of the view of the Standing Chapter 13 Trustee that counsel has provided services of value to the Debtors and has been diligent in representing his clients in this case and that a fee of $1,300.00 would, in her view, not be unreasonable.
The Court has taken these various factors into consideration. On balance, the Court believes that the order as originally entered allowing fees in the amount of $1,200.00 was correct. Therefore, counsel's Motion to Reconsider Sua Sponte Reduction of Allowed Fees is DENIED.
Counsel has also sought an award of expenses in the amount of $212.73 for copying and postage. This amount is clearly excessive. First, in allowing out-of-pocket expenses, this Court is bound by the same statutory guidelines. The expenses sought to be reimbursed must be both actual and necessary. The "necessary" requirement refers to necessary as the estate. Prior to analyzing the specific requests, this Court notes that the attorneys who represent the majority of Chapter 13 debtors before this Court routinely seek reimbursement for expenses. A random sample reveals that the amounts sought range from $25.00 in a 16-creditor case to $59.00 in a 33-creditor case. In no instance does this Court recall seeing in excess of $100.00 sought.
It is appropriate that counsel charge for expenses which are necessary to the estate. Very clearly, that would be for the plan (including the motion to confirm and related notices, etc.), and the petition and statements and schedules. It is not appropriate that counsel be reimbursed for items which are of specific benefit to debtor; for example, preparing and mailing a "notice of automatic stay" to all creditors which this Applicant does in just about every case. That is unnecessary. In addition, counsel has determined it expedient to file proofs of claim for secured creditors in many cases, even prior to determining whether the creditor has filed one and before the time period for creditors to file proofs of claim has expired.
Again, the explanation of costs is inadequate. Counsel has provided this Court with almost no explanation whatsoever to determine the propriety of the expenses sought. All the Court knows is that counsel seeks reimbursement for 998 copies charged at $0.15 per copy, but there is no itemization as to how many pages of what were made and why the number is as it is. Neither the number of creditors, the number of pages nor the number of sets have been itemized and this Court WILL NOT undertake to guess by counting pages, creditors and the number of sets, etc. Because the charges made are so disproportionate to those usually made by other attorneys in similar kinds of cases, the Court cannot allow reimbursement from the estate for these expenses without an adequate showing of the necessity for the charges which were made. Accordingly, this Court disallows the expenses requested in their entirety without prejudice to Applicant to refile as to the expenses only in accordance with the terms of this order.

*531 APPENDIX

 In re Thomas & Madonna CASULL
 Case No. 91-21565 CEM
 INITIAL TIME SUMMARY AND COSTS EXHIBIT
OPINION NO. DATE PURPOSE/WORK PERFORMED PERSON TIME
 8-19-91 OC: husband, review all debts, financial CRB 1.0
 situation, relief and options
 under chapter 7 or 13;
 (1) 8-19-91 TC: from husband, wants to schedule CRB .1
 an appointment to go over
 everything with wife;
 8-20-91 OC: both clients, highlight basic solution CRB 1.1
 and relief, answer remaining
 questions from preliminary meeting;
 payment to get BK started,
 things to do list, explained 4 things
 to tell creditors;
 (2) 8-21-91 work on scheduling debts; CRB 1.8
 (2) 8-22-91 work on schedules for quick filing; CRB .9
 copies of secured documents;
 (1) 8-22-91 TC: from husband, doesn't think CRB .1
 car is co-signed, we will verify after
 filing, schedule an appointment to
 review quick;
(2, 3 & 4) 8-23-91 OC: both clients, review & finalize CRB 1.4
 quick filing, make some changes,
 add more creditors, answer all
 questions, gave appropriate advisements;
(2, 3 & 4) 8-23-91 Make all changes & finalize quick CRB 2.3
 filing;
 (3) 8-26-91 Review quick filing  ALL; DWA 1.2
 (1) 8-26-91 Make copies of quick filing for CMD .3
 handcarry;
 (1) 8-26-91 Review above copies; CRB .1
 (1) 8-26-91 LDTC: from husband, called in CMD .1
 case #;
 (1) 8-26-91 LDTC: Debbie Brink, Central CRB .2
 Bank, gave BK information, had
 her verify there is not a co-signer
 on the loan, verify correct mailing
 address;
 (1) 8-27-91 TC: left message for clients to drop CMD .1
 off stamp filed bankruptcy papers;
 (1) 8-27-91 OC: husband, dropped off BK papers, CRB .3
 gave him copy of automatic
 stay to take to wife's employer to
 stop garnishment, set an appointment
 to review cure;
 (1) 8-27-91 Process automatic stay; CRB .4
 8-27-91 LDTC: Sharon Brown, paralegal CRB .2
 for Pablo Salas; gave her BK information,
 need release of garnishment,
 she said notice of auto stay
 should be good enough, they'd prepare
 release only if needed; received
 loan amounts, garnishment
 totals, need to know if they will
 accept payments outside; she'll
 check with the attorney;
 (1) 8-29-91 LDTC: left message for Pablo Salas, CRB .1
 Esq.;
*532
 (2, 4) 8-29-91 Prepare cure phase schedules; CRB .9
 (1) 8-29-91 Review deficient filing notice; CRB .1
 (1) 8-29-91 TC: from husband, received summons CRB .2
 for bad check, need copy to
 mail automatic stay & insurance
 binder;
 (1) 8-29-91 TC: from husband, called in bank CRB .1
 balances;
 (1) 8-29-91 LDTC: left another message for CRB .1
 Pablo Salas, Esq., (in meetings &
 court all day);
 8-30-91 LDTC: Pablo Salas, Esq., agreed CRB .3
 to accept student loan payments
 outside plan, worked out terms;
 8-30-91 Finalize plan & budget (student CRB .5
 loan language);
 8-20-91 OC: husband, advisement for bad DWA .9
 check summons & went over adversary
 options with his student
 loans;
 (1) 9-3-91 Review stamp filed automatic CRB .1
 stay;
 (2, 4) 9-3-91 OC: both clients, review & finalize CRB 1.1
 cure phase, add 4 more debts, answer
 questions, gave appropriate
 advisements, 341 review, plan payment
 advisements;
 (4) 9-3-91 OC: both clients, answer remaining DWA .5
 questions, Adversary advisements;
 (1) 9-4-91 Process automatic stay for lawsuit; CMD .3
 (3) 9-5-91 Review cure phase  ALL; DWA 1.6
 (1) 9-5-91 Made copies of cure phase; CMD .5
 (1) 9-5-91 Review above copies; CRB .1
 (1) 9-9-91 Process certificate of service for CMD .3
 cure;
 (1) 9-9-91 Review stamp filed automatic CMD .1
 stay;
 (1) 9-10-91 TC: from husband, wanted to CMD .1
 know when 1st plan payment was
 due;
 (1) 9-12-91 Review stamp filed certificate of CMD .1
 Svcs;
 9-16-91 Answer fingerhut letter; CMD .1
 (1) 9-16-91 Mail 341 instruction letter to CMD .1
 clients;
 9-18-91 Prepare motion to confirm schedules; CRB .8
 (1) 9-20-91 Process 1st plan payment; CMD .1
 (1) 9-23-91 Remail notice of automatic stay to CMD .1
 Steve DeVito, Esq.;
 (1) 9-24-91 TC: from husband, received another CRB .2
 bad check summons, need to
 add to bankruptcy with another
 forgotten creditor;
 (1) 9-26-91 TC: from husband, need to reschedule CMD .1
 appointment;
 (1) 10-1-91 TC: husband, missed appointment, CMD .1
 set another to bring in debts and
 review motion to confirm schedules;
*533
 10-4-91 OC: both, review and finalize motion CRB .5
 to confirm, answer questions,
 review 341, gave appropriate advisements;
 10-4-91 OC: both, answer remaining questions; DWA .3
 (1) 10-4-91 Prepare 2 Notice to Creditors & CMD .2
 Mail;
 (2) 10-4-91 Prepare creditor amendment, CRB .6
 amended matrix, and change motion
 to confirm totals, prepare 3rd
 automatic stay notice;
 10-7-91 341 hearing & conference with DWA .2
 clients;
 (1) 10-7-91 TC: from husband, received notice CRB .1
 from District Attorney for bad
 check, advised must pay within 10
 days of notice to avoid criminal
 charges filed;
 (1) 10-8-91 Review Stamp filed automatic CMD .1
 stay;
 (4) 10-10-91 Process 2nd phase of creditor CMD .4
 amendment;
 10-10-91 Review creditor amendment; DWA .1
 (1) 10-11-91 Copies of Motion to confirm; CMD .6
 (1) 10-17-91 Answer Dominos letter; CRB .1
 (1) 10-17-91 Review Stamp filed motion to confirm; CMD .1
 10-24-91 Draft agreement to turnover tax DWA .3
 returns per Trustees request at
 341 in lieu of objection to confirmation;
 (1) 10-24-91 TC: husband, need clients to come CRB .1
 and review agreement regarding
 tax returns;
 10-29-91 Prepare proof of claims & Rule 45 CRB .6
 Notices;
 11-5-91 OC: both, review and sign agreement CRB .2
 for tax return turnover;
 11-7-91 Draft letter to Sally Zeman with DWA .2
 Debtors agreement with chapter
 13 Trustee attached thereto/notes
 on file to MONITOR CASE;
 (1) 11-12-91 Process plan payment; CMD .1
 11-20-91 Review proof of claims & Rule 45 DWA .4
 Notices;
 11-20-91 Initial Fee Application; CRB 1.0
 ½
 11-21-91 Review Fee Application; DWA .5
 CHARGES FOR OUT-OF-POCKET EXPENSES
 COPIES
 119  quick filing
 67  automatic stay
 18  2nd automatic stay
 217  cure phase
 76  certificate of service for cure
 25  notice to creditor & 3rd automatic stay
 18  creditor amendment
 80  2nd phase creditor amendment
*534
 352  motion to confirm filing
 4  tax turnover agreement
 22  proof of claims & rule 44 notices
 TOTAL PHOTOCOPIES: 998 (998 @ $.15 = $149.70) $149.70
 POSTAGE
 $15.77  automatic stay
 $ 2.84  2nd automatic stay
 $ 6.86  cure phase
 $ 4.15  certificate of service for cure
 $ 3.82  notice to creditor & 3rd automatic stay
 $ 5.43  2nd phase creditor amendment
 $20.40  motion to confirm filing
 $ .58  tax turnover agreement
 $ 3.18  proof of claims & rule 44 notices
 TOTAL POSTAGE: $63.03 $ 63.03
 TOTAL COSTS: $212.73
 (This total does not include the copies and postage for this Initial Chapter 13 Fee
Application).